IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MICHIGAN
Southern Division

ELIAS AWAD, an individual,

          Plaintiff,                  Civil Action No. 11-14082

v.                                        Judge Avern Cohn

CHRYSLER GROUP, LLC, a Delaware limited
liability company,

          Defendant.

**FIRST AMENDED COMPLAINT AND
RELIANCE ON PREVIOUSLY FILED DEMAND FOR JURY TRIAL**

### Introduction

1. Plaintiff Elias Awad ("Awad") brings this action against Defendant Chrysler Group, LLC ("Chrysler") for Defendant's retaliation against him, in violation of the Civil False Claims Act, 31 U.S.C. § 3730 (h), for his uncovering, attempting to report, and refusal to engage in fraudulent activity as demanded by his supervisors against the U.S. Government.

2. This fraudulent activity consisted of upper management knowingly and fraudulently presenting false records or statements, in addition to concealing improper conduct to defraud the company, its Board of Directors, and the U.S. Government in certain assets it had ownership interests in, where said assets were to be fraudulently disposed of at a price significantly below fair market value.

3. Plaintiff put Defendant on notice of said fraudulent activity.

### Jurisdiction and Venue

4. This action arises under the False Claims Act, 31 U.S.C. § 3729 et seq.

5. This Court has jurisdiction over this case pursuant to 31 U.S.C. § 3732(a). This Court also has jurisdiction pursuant to 28 U.S.C. § 1331.

6. Venue is proper in this District pursuant to 31 U.S.C. § 3732(a), because the acts proscribed by 31 U.S.C. § 3730 (h) and complained of herein took place in this District, and is also proper pursuant to 28 U.S.C. § 1391(b) and (c), because at all times material and relevant, Defendant transact and transacted business in this District.

### Parties

7. Plaintiff Awad is a citizen of the United States of America and a resident of the State of Michigan.

8. Defendant Chrysler is a Delaware limited liability company that designs, engineers, manufactures, distributes, and sells vehicles under the brand names of Chrysler, Jeep, Dodge, and Ram.

9. Through the use of federal funds, Chrysler was formed on April 28, 2009, to complete the transactions contemplated by a certain Master Transaction Agreement[1], dated April 30, 2009, under which Chrysler agreed to purchase the principal operating assets of an entity named Old Carco.

10. In connection with this transaction, Chrysler issued membership interests to UAW, Fiat North America, L.L.C. ("Fiat"), the U.S. Department of the Treasury ("U.S. Government"), and Canada CH Investment Corporation (or "Canadian Government"), in exchange for capital contributions and in consideration of the transactions contemplated by the Master Transaction Agreement.

11. The respective individual ownership interests for each Member in Chrysler, initially, were allocated approximately as follows: 1) Fiat, Twenty (20%) Percent; 2) UAW, Sixty (68%) Percent; 3) U.S. Government, Ten (10%) Percent; and 4) Canadian Government, Two (2%) Percent. (**Exhibit A**, pg 15 of Addendum)

12. According to the June 10, 2009 Operating Agreement entered with U.S. Government, it was agreed:

    a. The Company shall keep, or cause to be kept, (i) complete and accurate books and records of account of the Company, (ii) minutes of the proceedings of meetings of the Members, the Board of Directors and any committee thereof . . . *The books of the company (other than books required to maintain Capital Accounts), shall be kept on the accrual basis of accounting, and otherwise in accordance with GAAP*, and shall at all times be maintained or made available at the principal office of the company., *The Company shall, and shall cause its Subsidiaries to, (A) make and keep financial records in reasonable detail that accurately and fairly reflect all financial transactions and dispositions of the assets of the Company and its Subsidiaries* and (B) maintain a system of internal accounting controls sufficient to provide reasonable assurances that (1) transactions are executed in accordance with authorization by the Person in charge and are recorded so as to provide proper financial statements and maintain accountability for assets and (2) safeguards are established to prevent unauthorized persons from having access to the assets, including the performance of periodic physical inventories (**Ex. A** Sec. 12.2) (emphasis added);

    b. That Chrysler's book profits and book losses shall be allocated to the members in proportion to the total interest of each member(sec. 4.2);

    c. That the Board of Directors for Chrysler shall total nine (9) where the U.S. Government shall initially designate three (3) Directors, the Canadian Government, (1) Director, the UAW, one (1) Director, and Fiat three (3) Directors. (**Ex. A** Sec. 5.3);

---

[1] According to a certain June 10, 2009, Operating Agreement, Master Transaction Agreement means the Master Transaction Agreement dated as of April 30, 2009, by and among Chrysler, Fiat parent, the U.S. Government, UAW and its affiliates, and the Canadian Government.

d. Unless otherwise determined by the Board of Directors, including a Fiat Director, the business, affairs and operations of the Company shall be conducted in a prudent manner in accordance with international automotive practices. The Board of Directors, including a Fiat Director, shall adopt corporate ethics, anti-bribery, anti-corruption, safety, environmental and other policies at least equivalent to those applicable to Fiat Parent. . . (c) on any matter involving a conflict of interest not provided for in this Agreement, each Director and Officer shall be guided by its reasonable judgment as to the best interests of the Company and its Subsidiaries and shall take such actions as are determined by such Person to be necessary or appropriate to ameliorate such conflict of interest . . . (d) Subject to, and as limited by the provisions of this Agreement (including Section 5.8(d), the Directors and the Officers, in the performance of their duties as such, shall owe to the Company and its Members duties of loyalty and due care of the type owed under Law by directors and officers of a business corporation incorporated under the Delaware General Corporation Law . . . .(**Ex. A** Sec. 5.14)

13. According to the June 10, 2009 Operating Agreement, the parties further agreed that Major Decisions shall require an informative vote of the majority of the Board of Directors which would include any decision that involved the following (**Ex. A** - Sec. 5.8):

    a. A material change in the business purpose of the Company; and

    b. Any consummation of any merger, business combination, consolidation, corporate organization, or any transaction constituting a change of control by the company with or into any entity;

    c. Any proposal or action by the Company that is not in accordance with the Business Plan[2] and/or Annual Operating Budget;

    d. To the extent applicable, any other decision over which the Company has granted approval rights to the U.S. Treasury under the U.S. Treasury Loan.

14. According to the June 10, 2009 Operating Agreement, it was also agreed that other decisions are to be decided by a majority vote 5.8(d), and in order to constitute a quorum for a vote, *the presence of the U.S. Government is required so long as they are a Member* (11.4).

### Background Facts Leading Up to the Retaliation And Scheme to Defraud the U.S. Government

15. Plaintiff Awad had been an employee of Defendant Chrysler, and its predecessors, since 1998, where during the course of his employment, the last title he held was Financial Director – Chief Financial Officer of the Chrysler de Venezuela subsidiary.

16. Prior to being the Financial Director of the Venezuela Subsidiary for the time periods of 2010 and 2011, Plaintiff Awad was a regional controller for Latin America from 2007 to 2010.

---

[2] According to the First Amendment to the Operating Agreement, Business Plan must be approved by the Board of Directors and shall refer to Chrysler's business strategy (**Ex. A** – Sec. 1.2 of the First Amendment).

17. During the course of his employment, in January 2010, Plaintiff Awad was assigned as the lead financial analyst on the sale of a subsidiary for Chrysler in Colombia to be known as Chrysler Colombia.

18. While employed, Plaintiff Awad learned that upper management of Chrysler specifically, Mike Manley and Barbara Pilarski, had entered into negotiations exclusively with a European distributor known as S.K. Berge Group from Spain.

19. As part of his duties, in, or around February 2010, Plaintiff Awad conducted his initial analysis of the true fair market value of Chrysler Colombia, where he determined that Chrysler Colombia had a fair market value of approximately One Hundred Million and no/100 ($100,000,000) Dollars.

20. Upon the completion of this analysis, Defendant Chrysler's upper management, which included, Mike Manley, Barbara Pilarski, and Richard Roth, instructed Plaintiff Awad to manipulate the books so as to reflect only a fraction of the true value for the Colombia subsidiary of only 1.5 million when the Colombia subsidiary had a fair market value far above that amount.

21. In, or around March 2010, Plaintiff Awad objected to the manipulation of the books vehemently, and emphasized the strongest need to report it to Chrysler's Board of Directors, including the U.S. Government, as it had an ownership interest in Defendant at that time. Plaintiff Awad further expressed the strongest opposition in the way Mike Manley and Barbara Pilarski were trying to manipulate the value of the Colombia subsidiary, so as not to record its true value.

22. During this same time, Plaintiff Awad also expressed his concern to Chrysler's counsel.

23. Plaintiff Awad repeatedly voiced his strongest concerns to Barbara Pilarski, Richard Roth and Mike Manley on several occasions.

24. Subsequently, Plaintiff Awad was taken off the project for the sale of the Chrysler Colombia transaction, and later reassigned to Venezuela.

25. Plaintiff Awad had the belief that what he was being asked to do was unlawful, in violation of the Generally Accepted Accounting Principles (GAAP), security laws, tax laws, and/or terms, conditions, rules and regulations promulgated by the U.S. Department of Treasury.

26. Further, Chrysler management's request to cook the books or manipulate the figures so as not to fairly represent the true financial picture was also in violation of one or more of the parties' Agreements[3], in addition to applicable federal laws.

27. In addition to Elias's direct opposition to manipulate the records, personnel from the Colombia subsidiary pled with Plaintiff Awad to advise Chrysler's upper management: (1) not to be sold at such a drastic discount; and (2) that they have other investors that would pay substantially more for the subsidiary.

28. Plaintiff Awad and others also advised Chrysler management of the opposition voiced by the management of the Colombia subsidiary and of the prospective investors who were willing to pay far in excess of what Berge was willing to pay, only to be ignored and refused.

---

[3] Agreements include the April 30, 2009, Master Transaction Agreement; the June 10, 2009, Amended and Restated Limited Liability Company; June 10, 2009, Shareholder Agreement; June 10, 2009, First Lien Credit Agreement, and the April 5, 2011, Third Amendment to the LLC Operating Agreement.

29. Plaintiff Awad engaged in protected activity when he made these internal complaints regarding the fraudulent activity being committed by Chrysler's management on the company, its Board of Directors and U.S. Government.

30. Defendant knew, or should have known that Plaintiff's internal complaint about prospective fraud was protected activity.

31. Subsequently, Plaintiff Awad was pulled off the project, and later received a performance appraisal less favorable than in prior years.

32. Plaintiff Awad was also later transferred, demoted, and eventually terminated.

33. Upon information and belief, on or about November 2010, the Chrysler subsidiary was sold for a price far less than fair market value.

34. Defendant's actions in removing Plaintiff from the project, transferring and later demoting him were motivated, in part, due to the protected activity he engaged in, as described above.

## Count I
### *Retaliation Under 31 U.S.C. § 3730(h) ("Act")*

35. Plaintiff Awad realleges and incorporates the allegations of the preceding paragraphs, as if fully set forth herein.

36. From the time period Plaintiff Awad refused to manipulate the records and reduce the true market value of the Colombia subsidiary from One Hundred Million and no/100 ($100,000,000) Dollars to One Million Five Hundred Thousand and no/100 ($1,500,000) Dollars, Plaintiff Awad was retaliated against, including by not limited to, being removed off the project, harassed, given poor evaluation,, transferred to Venezuela, falsely accused, and later demoted..

37. Defendant retaliated against Plaintiff for attempting to report fraud on the company, its Board of Directors and the U.S. Government.

38. Plaintiff wanted the U.S. Government to know that the Colombia subsidiary would be reflected on the books at a value far less than fair market value.

39. Plaintiff's attempts to have this improper conduct reported was protected by the 31 U.S.C. § 3730.

40. Defendant, and its management, knew, or should have known, that Plaintiff's attempts to report what he believed were acts of fraud on the U.S. Government was protected activity.

41. Defendant, and its management, retaliated against Plaintiff as a result of the protected activity.

42. Defendant Chrysler retaliated against Plaintiff Awad in whole or in part for refusing to break the law, including applicable security laws, or violate generally accepted accounting principles.

43. As a direct and proximate result of Plaintiff's refusal to violate the law, GAAP principles, guidelines, rules and/or regulations and as a result of Defendant's retaliatory conduct against Plaintiff, Plaintiff has suffered financial distress, including but not limited to, the loss of

5

benefits, reputation, stature, pension, stock options, earning capacity, ability to work, and will continue to suffer these losses in the future.

44. As a direct and proximate result of Defendant's violations stated above, Plaintiff has, also, suffered depression, emotional and physical distress, mental and physical anguish, humiliation, embarrassment, and will continue to suffer these problems in the future.

45. As a direct and proximate result of this unlawful and discriminatory harassment, Plaintiff Awad has, also, suffered emotional pain and mental anguish, together with serious economic hardship, and special damages associated with his efforts to obtain alternative employment in an amount to be proven at trial.

WHEREFORE, Plaintiff Awad respectfully requests this Court to enter a judgment against Defendant, and that he be granted all relief necessary to make him whole, including but not limited to reinstatement with the same seniority status, two times his back pay, litigation costs, attorney fees, and other compensatory damages, as allowed by the Act, and sustained as a result of Defendant's harassment and retaliation, and any other relief or award this Honorable Court deems just and equitable.

## Count II

### *State Claim; Retaliatory Discharge in Violation of Public Policy*

46. Plaintiff Awad realleges and incorporates the allegations of the preceding paragraphs, as if fully set forth herein.

47. Defendant, through their agents, servants, or employees, violated the Generally Accepted Accounting Principles (GAAP), security laws, and/or terms, conditions, rules and regulations promulgated by the U.S. Department of Treasury, the United State Securities and Exchange Commission, and agreed to by the parties in Agreements[4], and other applicable federal law.

48. Plaintiff Awad refused to break applicable laws referenced above or violate GAAP, when demanded of him by his superiors of Defendant, including but not limited to, Manley, Roth and Pilarski.

49. Plaintiff Awad's refusal to manipulate the records was a motivating factor in the retaliation he suffered including but not limited to demotion, transfer, and eventually termination.

50. Defendant Chrysler's management retaliation against Plaintiff in whole or in part for refusing to break the law, including applicable security laws, or violate generally accepted accounting principles.

51. As a direct and proximate result of Plaintiff's refusal to violate the law, GAAP principles, guidelines, rules and/or regulations, Plaintiff suffered, financial distress including the loss of benefits, reputation, stature, pension, stock options, earning capacity, ability to work, and will suffer these losses in the future.

---

[4] Agreements include the April 30, 2009, Master Transaction Agreement; the June 10, 2009, Amended and Restated Limited Liability Company; June 10, 2009, Shareholder Agreement; June 10, 2009, First Lien Credit Agreement, and the April 5, 2011, Third Amendment to the LLC Operating Agreement.

52. As a direct and proximate result of Defendant's violations stated above, Plaintiff has, also, suffered depression, emotional and physical distress, mental and physical anguish, humiliation, embarrassment, and will suffer these problems in the future.

53. As a direct and proximate result of this unlawful and discriminatory harassment, Plaintiff Awad has, also, suffered emotional pain and mental anguish, together with serious economic hardship, and special damages associated with his efforts to obtain alternative employment in an amount to be proven at trial.

WHEREFORE, Plaintiff Awad respectfully requests this Court to enter a judgment against Defendant, and that he be granted all relief necessary to make him whole, including but not limited to reinstatement with the same seniority status together with interest, cost, and attorney fees, and any other relief or award this Honorable Court deems just and equitable.

Respectfully Submitted,

AKEEL & VALENTINE, PLC

/s/ Shereef H. Akeel
By: Shereef H. Akeel P54345
Attorneys for Elias Awad
888 West Big Beaver Road, Suite 910
Troy, MI 48084-4748
Telephone: (248) 269-9595

DATED: April 10, 2013

**PROOF OF SERVICE**

The undersigned certifies that on the 10th day of April, 2013, the foregoing document(s) was served upon counsel of record via the court's electronic filing and notification system.

/s/ Catherine Parafian

Z:\Myfiles\A_B\Awad, Elias\Federal Case\Pleadings\Amended Complaint\1st Amended complaint-FILE.doc